23-31-87 United States of America v. Jonathan Joshua Munafo, a felon. Mr. Lerman, for the a felon. Mr. Dashefsky, for the a felon. Good morning, Mr. Lerman. I'm Kevin Lerman. I represent Jonathan Munafo. May it please the Court. We're asking the Court to find breach where the government relied on alleged association and abstract beliefs to seek a higher sentence after reserving a right only to prove up misconduct related to the 111 and 231A3 charges Jonathan Munafo pleaded guilty to. Relatedly, we ask the Court to vacate the sentence as it was imposed in a proceeding that violated the First Amendment. Since there's overlap between both claims, I'd like to start with the First Amendment conduct because I think at this point we're agreed that three out of four areas of advocacy implicate the First Amendment, and I'd like to attempt to convince Your Honors that the fourth area, the allegation that Jonathan Munafo had somehow joined a group faction while at the D.C. jail, also implicates the First Amendment. Regarding that allegation... Can I ask you a procedural question about your breach of the plea agreement claim on this? You are not asking to withdraw this plea. You're saying there was a breach of the plea agreement, but you don't want to withdraw the plea. You just want us to remand for resentencing. That's correct, Your Honor. So basically you're saying specific performance, like you promised not to say these things, we should get a new sentencing hearing where you don't say these things. But you — defense counsel raised these issues before the district court, and the district court addressed them and said, I'm not relying on these issues. Like, you're — the issues about, you know, the First Amendment, I guess, right to associate with front row peep Joes and things of that nature. The district court said, I hear you. I don't see this as a breach of the plea agreement. I'm not relying on that stuff. So I don't understand why we should remand for him to say that again, given that he already heard these arguments, said, I'm not relying on them. If all you want is another sentencing, I think this has already happened exactly the way you wanted it to happen. You raised it, and he didn't consider it. Well, Judge Pan, I would push back against that because there were multiple issues that we raised. And one of the issues that the court said that he wasn't relying on was the statements that could be heard on video on January 6th. And the court said that he wasn't relying on that, and that's not something that plays a part in our brief. But if you look at the record, it's extremely difficult to parse out what the court would have relied on and what the court didn't rely on. At appendix 154, we warned that the government was relying on unreliable information. Then at page 156, the court said, this doesn't look like speculation to me. At 158, it notes that the government's allocution was a forceful one. And at 159, it says, as long as it's supported, thoughtful, and articulate, then the government's done its job. None of this associational conduct. Didn't he also say, though, I'm just sentencing him based on his conduct? His conduct, this is on 157, he doesn't need any imputation. His conduct's as serious enough as it is, and we saw it, and that's what I'm relying on when I impose sentence. Well, he said that elsewhere in the record, Your Honor, and then he said, and the question is, is there anything else about this defendant that warrants a sentence higher or lower? And then when the judge pronounces sentence, the judge states, based on the spectrum of people I've sentenced, I can't go any lower. And this was, for any impartial observer of this sentencing proceeding, anyone could see that the government places this claim that these four dimensions of First Amendment implicating conduct at the forefront of its sentencing allocution and says repeatedly, this shows a lack of respect for the law. So it's, I think that the record essentially, it's too dirty and difficult to dissect. So I don't think that we obtained specific performance, and I would also stress very strongly that. So I think the key question is, what specifically would you point to to show that the district court, not the government, that the district court considered anything other than his conduct? Is it the statement that, looking at the spectrum of other defendants that I've seen, or is there a more affirmative statement suggesting that Judge Boasberg considered something other than the defendant's conduct? Well, I think the court had to consider something other because under 3553A1, it's his history and characteristics that the court had to consider. And the court also stated there's a lot of violence in your history. And you'll recall that this is someone who entered custody in 2021 as in criminal history category one. So is that a reference to actual physical violence against someone when this, the offense here, was a weaponless physical contact with a riot officer's helmet and chest armor? And in terms of what the court referenced for violence, again, any, I think any impartial observer would know that, or would have at least the impression that the person. He didn't even punch a police officer twice. I'm sorry? He punched a police officer twice. That's correct. That's the underlying conduct. That's correct. That's violent. And that's one offense. What the court referenced is there's a lot of violence in your history. And the court had just listened to the government's allocution and the baseless claim that Jonathan Munafo had somehow joined a group faction while in the D.C. jail pod. Everyone in the sentencing hearing and everyone today knows that the claim of someone joining a group faction and engaging in some kind of conduct, which, again, the government's very careful not to actually claim that it knows that there's some specific fact of any violent conduct. It's that someone has alleged to say that it's believed that he's participated in this. And so I think that, and I'd like to return one step before that. In terms of when the First Amendment's implicated, the core of the First Amendment is participation in political speech. And so one of the things that the Supreme Court has said, the freedom of speech is delicate and vulnerable as well as extremely precious in our society. So even the threat of sanctions may deter exercise as potently as actual sanctions. So anyone observing this proceeding could reasonably understand that Jonathan Munafo, when the most powerful prosecutorial department in the world is accusing him of what it calls misconduct in the form of associating with other supporters of the Republican presidential candidate or calling into a line where someone's doing prayer vigils. And I think one of the things to infer what the court decided upon, the court ultimately does give a sentence very close to what the government requested. And I think one of the disturbing things about the government's advocacy is that there's a comment about this concept of the Boasberg discount that's sandwiched between First Amendment-violating advocacy. That comment is as if to say, look, Jonathan Munafo and these prayer circle gulag advocators think your honor is on their side. They want the discount. They don't respect the law. They don't respect you. So that put the court in an extremely difficult position. I see that my time is up for this. Let me ask you a question. This is coming to us from a plea agreement where the right to appeal, the sentence was largely waived. What is the standard that we apply if we're declining to enforce the otherwise applicable waiver? Colorably alleged to rest on a constitutionally impermissible factor was in Guyenne, but that was a case in which the issue was preserved. So is it ‑‑ and there's also this question about the appearance. Like, how do you roll these all into what should we be ‑‑ through what lens should we be reviewing the claim that you're making? We think that the court should adopt a standard similar to what the Second Circuit supplied in Cava and Leung in these cases where the sentence appears to rest on some other constitutionally impermissible factor, and that's just based on what an impartial observer might perceive observing the hearing, especially again. But how do you give weight or operational role to the fact that this is a waiver, this is a plea waiver here? So you're referring to a standard, the standard on review of a non‑waived matter.  And so we think that the miscarriage of justice standard plainly applies and the court can bypass the waiver, especially given that the government was on notice that this type of advocacy violated precedent. It wasn't lawful to attack First Amendment associations and it's not lawful to ask the court, or I'm sorry, it's not lawful for a court to base a sentence on unreliable and baseless allegations. So would it be that the defendant colorably alleged that the sentence has the appearance of resting on First Amendment protected activity? I'm just trying to figure out how we cash out the miscarriage of justice in the particular context of the claim that you're raising. Because you're not arguing that, well, are you arguing that Judge Boasberg actually relied on, or I take your main argument to be that there's an appearance that Judge Boasberg relied on First Amendment protected activity, that on a preserved appeal that alone potentially would be enough, but this is not, this is from a waived appeal. So the waiver issue, I think that if there's a colorable allegation, especially given the importance of First Amendment protections, I think that's sufficient. Is it a colorable allegation that the sentence did rest on First Amendment activity or a colorable allegation that the sentence had the appearance of resting on a First Amendment allegation, a First Amendment activity? I think that's the rule that we're proposing, that if it's a colorable allegation that it had the appearance, because otherwise it would incentivize the government to essentially gamble on putting this content out there, and the court could say, you know what, I didn't rely on that, and it's a different standard. Obviously there's some overlap, but when the Supreme Court sent Santabello back, the court there had said, I'm not relying on anything that the government is saying, and I'm just sentencing purely based on what I desire to sentence, and that wasn't enough for the Supreme Court, given the importance of constitutional rights. Now, there, that was the right to trial, the broader right to due process. But the right to First Amendment, especially when it's an amendment that prohibits – it's a stop on government action. So I think that there's ample basis to apply the miscarriage of justice. And I take it also, and Judge Pan was asking about this at the outset, you're arguing that the government did not adhere to the terms of the plea agreement, and therefore you don't need to show anything further to potentially get a resentencing. I gather your argument being that voids the waiver. But what provision of the plea agreement was violated? Because the agreement expressly permits both parties at sentencing to offer relevant facts, including any misconduct not described in the charges to which the defendant is pleading guilty. So our argument focuses mainly on Clause 7, the reservation of allocution. And what we understood the government to have reserved is an allocution focused on misconduct and not something that could swallow up the other provisions of the plea agreement. So misconduct had to actually be something unlawful. It couldn't be something that didn't happen, which is in the case of the group faction allegation. And it couldn't be something that the government has no lawful right to prohibit in the first place. Wait. You said, and I just want to give you a chance to correct you, you said that misconduct has to be something unlawful. What we understood – It has to be something that – does it have to be something unlawful? I mean, lack of remorse, for example, is something routinely considered in sentencing. It's something unlawful about lack of remorse. So one of the things that we did in our 28J when we added Fisher to the record is that the – all these provisions have to be read in their context. And so this case changed from a case alleging the corrupt obstruction of justice to a case that is focused on these two charges, which if we look at the elements of the charges out of Appendix 55 and 56, these are physical conduct charges. And so maybe I would walk that back partially because the conduct didn't necessarily have to be unlawful standing alone. But if the government's – if the government-drafted clause specifically says that they can address misconduct not described in the charges to which your client is pleading guilty, we understood that. Aside from the custom of what happens when a pre-sentence investigation is done and a pre-sentence report is prepared that goes through criminal history, we obviously understood that process would happen. But any misconduct, we understood that, especially in the context of these cases, which, again, that's part of why we cite to the cases of Ryan and Rhodes, to show that courts at this time, and the government was litigating these cases, were very careful in allowing what the government could introduce. In the Ryan case, the court issued an order saying you can't use the word insurrection unless outside of the jury that has been shown that this is what's happening. So essentially, though, we have a broad provision in this plea agreement, and you have a plea waiver, like where you're not supposed to be appealing your sentence unless it's a horrible constitutional violation. But your claim is there's an inaccuracy in the allocution, and you're trying to smuggle this inaccuracy in the allocution claim beyond the – the plea waiver into a constitutional violation? Because you cannot appeal your sentence based on just a misstatement in the allocution. It has to be a culpable constitutional violation. That's right. And you're trying to make it seem like a breach of the plea agreement, but this plea agreement's really broad. We think it's both things, and it's not just an – it's both inaccurate information and it's information that's in the front to the First Amendment rights. But you've waived the ability to appeal inaccurate information. That's – that's definitely covered in your plea waiver.  And that's – that's why we – that's why we introduced a case that was just decided is not binding on this court, Mojica-Ramos, which shows that the government can exacerbate a breach of the – a breach of the plea agreement with this inaccurate information. So once they've violated the – the constitutional rights of the person being sentenced, that can be exacerbated, and the – and the plea breaches. Can I ask you a question about your other claim, which is your claim that the government was required to dismiss the Superior Court case, and it was a breach of the plea agreement that they failed to do so? Because looking at the record on that, the sentencing transcript at JA-167 and 168, I see a procedural problem with that claim, because the way this came up was at sentencing, the defense attorney raised, apparently for the first time, the government at this time is required to move for the dismissal of this Superior Court case. And then the government says, you're throwing something on – someone on scene. This wasn't part of something they requested of me beforehand. The court says, let me check, let me look at the agreement. Then the government says, this is something that should be done through Superior Court, not through District Court, because the U.S. Attorney's Office has a different division for this. And then the court says, I think I'm not going to say anything about that, Mr. Nisgar. If you are seeking that dismissal, I think you should talk to Mr. Murphy or someone in the Superior Court division of the U.S. Attorney's Office. And then defense counsel says, OK. He says, OK. So the court says, I'm not going to rule on this. And defense counsel says, OK. So there's no ruling here for us to review on this claim. And it seems to me that if you wanted to preserve this issue for appeal, defense counsel should have said, respectfully, Judge Boasberg, we don't think we need to go to the Superior Court division, because we're entitled under this dismissal of this charge right now. And then we would have a ruling to review. But since he didn't do that, why is this preserved for us to review? There's no ruling here. And defense counsel agreed that there should be no ruling. Nisgar I read that a little bit differently, Judge Pan. Because I think that the government raised one claim that this is that this charge wasn't related to January 6th, and the court said, hold on a minute, it doesn't have to be related. There can be an agreement to dismiss something else. And then we were referred to get the dismissal by the Superior Court division. So I think it would be Where do you see a ruling by the district court that you are correct that the plea agreement required dismissal? Nisgar So I see more of an abandonment of the issue by the government at Appendix 170. That's something that would need to be done through Superior Court. It's not that we need to go litigate the breach. The plea agreement was accepted by this court. The parties to the agreement were there in front of the court. And the government hears that. The government finds out that the charge didn't have to be related to. And that's what we understood all the time, the whole time. There was only one other charge, and everyone knew that it was pending. And also, that's what we understood from the circumstances, because Jonathan was in Washington, D.C. for months. Kagan So just to be clear, your argument then relies upon an understanding that the government conceded and the court said, you're right, just go to Superior Court and get that dismissed? Nisgar That's how I understood it. Or I think that there's an implicit ruling. Kagan And so in order to win, we have to read that the way you just read it? Nisgar No. I think that then I'd encourage the court to understand that the court made an implicit ruling. I'm not going to say anything further. It doesn't mean that I don't think that this needs to be dismissed. It just means I can't do this from district court. And so the dismissal has to be done in Superior Court. Kagan Why doesn't this mean you need to talk to the U.S. Attorney's Office about this before I need to rule on it, including conferring with the Superior Court division? Nisgar I could understand. I think if there's two ways to look at it, I think that with Rule 51, I think that giving notice to the court of what the issue is and seeking a ruling, I think that was preserved and I think it would be a miscarriage of justice to ignore that because, you know, we took this case essentially as a volunteer appointment and if we have to go get admitted to another court to enforce a plea agreement when everyone's right there, I think that would be an excessive view of the record. Kagan What about the government's argument, you know, assuming that there was no failure to preserve, the government says that the plea agreement clearly didn't require the charge to be dismissed at all because I think that you or your predecessor was relying on the meaning of will not be charged and this already was charged. This was pending. Nisgar Right. And I think we've both submitted our interpretation of what will not be charged means and I think there are verbs that are kind of one-time thing verbs and there are verbs that are continuing. So will not be charged, they're promising not to either file charges or to dismiss charges that are pending. So I think this is definitely not and even the authority that the government goes to to say that what, you know, they have a Supreme Court case from 18 something, I think there's a logic fallacy operating there because, yeah, charging can mean the initiation of charges and it can mean placing someone in the state of charges. It's definitely a million miles away from a one-time thing verb like amputate or something like that that you can't come back from. I thought their clearest argument was that the plea separately talks about dismissing and further prosecuting and then there's this language about will not be charged. So it seems like if the Superior Court pending case would be addressed at all, it's dismissing or not further prosecuting rather than not charging given that that was already charged. I think there's a couple ways to understand that and I think all of them favor understanding that the case had to be dismissed by the government. First, charge, I think in this case, it likely meant very close to the same thing as prosecute, possibly broader, because if somebody, if you're promising that somebody will not be charged, that could apply, again, to charges that haven't been filed or charges that have been filed. And if there's two views, then the view has to be construed against the government. The other aspect of this particular clause is it requires, it says, an offense about which basically we were made aware by your client. So I certainly understand that they're aware that they've charged Mr. Monofo, but doesn't that language envision that it is something that the defendant is coming to the prosecutors and saying, I did this. If I plead guilty here, you will dismiss the charges. And it sounds like that type of thing did not happen. In other words, Mr. Monofo didn't, these are still pending charges in a different court. It's not as though he came in and described a set of facts that could, you know, essentially partially admitting that he engaged in this conduct in exchange for immunity. Why isn't that the way to read this? I don't think that charge seems to be written very broadly. And I think even Your Honor's question required a lot more words than is actually in the agreement, just like the government's contrary view to the one we presented. So I think that this is kind of like certain situations, whether a claim is exhausted and I think it should be construed broadly in favor of the person that the government with that clause gave immunity for those charges that it knew about. So I think generally they may be made aware in a number of ways, which is, I think, why they left it so open. There was other things in the plea agreement that required, for example, the defendant to turn over passwords to social media. And that was very precise. So I think it can be read that the broad language left open broad interpretation. Thank you. Thank you very much. Good morning. Good morning. May it please the Court. Ruvane Deshefsky for the United States. The government fulfilled its obligations under the plea agreement. It dismissed the eight remaining counts of the indictment. It advocated for the agreed-upon sentencing guidelines range. And, in fact, Monofo received a sentence within that range. The statements made by the government at sentencing that Monofo now challenges on appeal did not breach the agreement. And that's because the parties did not agree to limit their allocutions in any way that would implicate or prohibit the making of these statements. His arguments to the contrary are untethered from the actual language of the agreement and should be rejected. His sentencing challenge, which is based on those same statements, does not fare any better. As a preliminary matter, he waived his right to appeal, and that waiver should be enforced. He doesn't contest the validity of the waiver. He doesn't contest that his sentencing challenge falls within the scope of the waiver. Rather, he asked the Court to circumvent the waiver based on the miscarriage of justice exception. And that exception, which this Court has found to be very narrow, is not applicable here. There was no miscarriage of justice. The 33-month sentence imposed by the district court was within the guidelines. In fact, it was below the midpoint of the agreed-upon guidelines range. And Monofo expressly agreed in the plea agreement that any sentence within that range would be reasonable under the statutory sentencing factors. He has not and cannot colorably allege that this within-guidelines sentence rests on constitutionally impermissible factors. What about the appearance of relying on First Amendment-protected activity and how does that affect the standard that we should apply in reviewing a waived challenge, assuming that we think it is waived? The standard laid out by this Court in Guillen asks whether or not the sentence itself rests on constitutionally impermissible factors such as race or religion. It doesn't ask about the appearance of impropriety. And the Court has noted that this exception is very narrow. And that's because it's important that plea bargains are given weight. When a defendant agrees to waive their right to appeal, that is part of what they're giving up and incentivizes the government to enter into plea agreements. And this Court has noted that in multiple cases. And so by degrading the power of the waiver, by expanding the miscarriage of justice exception beyond what this Court has already recognized, would do disservice to defendants generally. What about, I mean, in the Cava case, and I know it's not fine in the Second Circuit case, you have a dynamic that is plausible where the court of appeals is unwilling to accuse the district judge of, you know, bigotry, but sees a problem and says, well, there's an appearance. And so do you not see any role for the appearance standard? You asserted that it has to actually rest on an impermissible factor. First, I would note, and I think Your Honor noted this earlier, that Cava is not a plea breach case. So it's already getting to the merits. But I think that's right. The question is sort of how do you, how does that, if we thought that had the right standard, how would that translate? If you thought that was the right standard, I would point to Cava itself and then also cases that apply the Cava standard. And these are cited in our brief. This is Quang Van and another case, which is Al-Badani, Sixth Circuit and Eighth Circuit cases. And all three of those cases focus the inquiry on what the court did in imposing the sentence and not what the government said. And that's important here, regardless of whether we're talking about the appearance of impropriety or whether the sentence actually rests on improper factors. And so the Second Circuit in Cava, it was dealing with a situation in which the district court explicitly said that it was going to impose a sentence to deter people in that same background, same national origin. And so the challenge statements in that case were problematic. And they came from the district court judge itself when it was explaining the sentence imposed. And the Sixth Circuit and the Eighth Circuit cases, I think, are illustrative here, because in those cases, there were also statements made by the district court that, according to the Sixth Circuit, might have raised the eyebrow of a reasonable observer. But in applying the Cava rule, they still looked at the explanation of the district court and found that there was no problem there. They affirmed the sentence because it was clear, based on the explanation of the district court, that even though they had made those remarks, even though they had made those statements that may raise an eyebrow, the sentence was actually based on proper sentencing factors. And so if the Court were to want to apply the Cava rule either to expand miscarriage of justice exception to waiver or on the merits, I think it's — I think the two things that are important there are the inquiry focuses on the Court's statements, and even where there might be a statement from the Court that is unreasonable, which is not the situation here, the courts still go on to look at maybe the totality of the circumstances or just the clear explanation of the Court as to why it was imposing the sentence that it did. Can you address the charged with issue in particular? Isn't it a completely normal usage of those terms to refer to sort of an ongoing status and not merely the act of filing charges? Just, I mean, for example, wouldn't it be a totally normal thing to say that Mr. Monofo is charged with misdemeanor assault in D.C. Superior Court right now? I think Monofo and the government disagree about what the word charged with means. And, you know, we cite our definitions. I'm not questioning why his reading is unreasonable, given that this is a plea agreement. And so I think that there are a number of factors that support our interpretation of what that means. First of all, the future looking will not be charged. It's anticipating future action. It's anticipating the government doing something in the future. And I think the only reasonable interpretation of that is looking to future action by the government to commence proceedings. But then there are also the other. If they take him to trial tomorrow and someone walked in and said, what's he charged with, I think we'd all understand what they were asking. And they would say he's charged with a misdemeanor assault. And I disagree. I think the legal meaning of the words are clear. But also, as the Court noted earlier in the argument, there are other statements in the plea agreement, other words in the plea agreement, that also underscore that this meaning, that the government's interpretation of the plea agreement is the only reasonable one. And that is in the preceding paragraph, where the government explicitly made the promise to dismiss other counts of the indictment and not to further prosecute Montefiore for conduct within the statement of offense. And so as — So I certainly appreciate that argument. And I guess this might be more of a comment than a question. But that would, you know, go a long way if we were interpreting a statute, these kinds of negative inferences and things like that. But this is a plea agreement. And it seems to me the onus should be on the government to be more clear about — you could also have said we will not initiate new charges against you. There's just so many ways this could have been much clearer. And I think you're — it's expecting a lot of a criminal defendant to arrive at your reading. Now, as Judge Pan has suggested, maybe you have stronger arguments. But this is the one you made in your brief. And I'm just not sure your — this mode of argument accounts for the fact that this is a plea agreement that we construe against the government. So I certainly agree. The case law is clear. Any ambiguity is construed against the government. But I would note also that Montefiore has been represented by counsel the whole time. You know, at the end of the plea agreement, they both sign, attesting to the fact that they reviewed this together. And this language has a clear legal meaning that is supported by the context and other parts of the plea agreement. Mr. Sheffield, I have a pair of questions. If we were to agree with Montefiore that the plea agreement required the dismissal of this D.C. assault charge, how would that work in practice? Would your office just communicate internally and dismiss the charge, or would the Federal District Court on remand have to order you to ask the D.C. Superior Court to dismiss it? Or what's the mechanism there, as you understand it? And I realize this is counterfactual to your position.  If the court finds that the language is ambiguous, I think the next step would be to remand to the district court to allow the government to dismiss the Superior Court charge in accordance with this court's interpretation of the plea agreement. And I would note, sorry. No, go ahead. I would note there as well, and I don't think that Montefiore contested this, that this is a collateral obligation and would not, if the court does go that route, it would not require reopening sentencing or anything like that. And in this, at the sentencing, Judge Pan had raised the discussion at the sentencing, when Montefiore asked that the D.C. assault charge be dismissed, the government there argued, you know, this isn't the right place. This court can't do that. That would have to happen for the Superior Court. But the government at that point did not argue the plea agreement doesn't even cover that because of the meaning of will not be charged, the point that you're making now. Is that a preservation problem for you? Does that mean you forfeited your argument about that? I don't think. The plain meaning of the plea agreement. I don't think so. And the reason for that is, as Judge Pan pointed out, district court didn't make a ruling. And I don't think any of the parties, including the district court, were addressing this issue with the plea agreement open before them. And, you know, I think that that is evident from the record. And once the court says, let me take a look, that's the end. The next thing that Chief Judge Blosberg said was, that's something that — I'm sorry. I think I'm not going to say anything about that. And so, you know, with no ruling, I don't think that there could be a preservation issue. On either side. Why didn't you argue this in your brief? That's a good question. Why didn't what? Why didn't you argue this in your brief? We don't — I just don't know if you forfeited the forfeiture argument. Although, I don't see a ruling to review. So I'm not exactly sure what to do with this. I think the thing that we were focused on in the brief is, you know, the question of breach, which we don't think that there is a breach here at all with regard to this provision. Right. There doesn't need to be a ruling for review of an asserted breach. Right? The breach happens. That's right. Yeah. If there are no further questions — I'm sorry. What does that mean, there doesn't have to be a ruling on a breach? The defendant asserts there's been a breach of the plea agreement. We need to have this charge dismissed now. The court says, I'm not going to say anything about this. I think you need to talk to the Superior Court Division. Defense counsel says, okay. Is that a breach? Or do we not know? Or what does that mean for our purposes here? I think that, as Your Honor pointed out, there was no ruling. And I believe, and I'd have to check this, but I think that we did point out that the proper avenue of addressing this would be through the Superior Court. It wasn't made as a waiver argument. It's on page 43 of our brief, footnote 15. It notes that any such claim of breach should be presented to the D.C. Superior Court in the first instance, as only that court can affect dismissal of the charge. So, in your view, is that still open to Mr. Monafo to do that? I mean, I think the issue there is that the parties disagree about the meaning of the provision, but it certainly would be open for him to ask for that. Isn't that what Judge Boasbrook contemplated? When I read this, I see him saying, I'm not going to say anything about this. Go to Mr. Murphy or the Superior Court Division. And in my mind, I'm thinking, first. Like, you need to go ask first, because maybe they'll agree and dismiss this thing, so I don't have to rule on it right now. And if the charge is still outstanding, I don't see why the defendant can't now go to the Superior Court Division and ask that it be dismissed pursuant to that plea agreement, because it's not as if Judge Boasbrook sentenced him or anything on that. He's done nothing with that Superior Court charge. So why isn't that still open to him? I don't disagree with that point. I think that would still be open to him. And I don't know – I'm not aware of any overture made after the sentencing hearing, although it's possible that it did happen. I don't know about that. Thank you. So this is – on that view, we – not only do we not need to, but we can't really reach that issue. In this posture. Unless I'm misapprehending. Is it not right because the U.S. Jury's Office hasn't decided whether or not to dismiss that? It hasn't been raised with the Superior Court Division or whatever? Assuming that that is correct, that it has not been raised with the Superior Court Division, I think that certainly makes sense. If there are no further questions, we would ask that the Court affirm the District Court judgment. Thank you. Has Mr. Lerman reserved any time for rebuttal? Good morning once again, Your Honors. I'd like to start with the Government Council's comments on the miscarriage of justice exception. We think that the opposite of what the government assumes will happen if the miscarriage of justice exception is applied here will actually happen because future bargains will be more efficient and it should really be a very rare occurrence where the government engages in this type of conduct. And I think that a ruling that addresses these First Amendment violations could deter the government from engaging in this sort of conduct in the future because when we counseled Mr. Montefiore to sign the plea agreement, we assumed that the government would follow Dawson. We assumed that the government would follow this circuit's case law, including United States v. Lerman. And we assumed that the government would proceed with the utmost care given that it was prosecuting a supporter of the opposing political party that's now in power. And so we assumed that they would follow case law, including comments from the Supreme Court that state that protecting the sphere of intellect and consciousness in the right to think and express, for example, with the reading of the book Becoming a Barbarian, which Jonathan Montefiore referenced, those safeguards are essential to protect the processes that define a free society. And so we do think that that exception should apply. And I'd like to hear your view on what just transpired about whether there's further proceeding, whether in the district court or in the superior court, that would need to happen before we interpret the portion of the plea agreement about will not be charged. I don't think that that's necessary. And I think the government's view would read out the right to appeal of the judgment in this sentence. And I can clarify for the record that we contacted the U.S. Attorney's Office's Superior Court Division. We contacted the Government Sentencing Council, who's here in court today as well, and they've refused to dismiss the pending D.C. Code case. When did that happen? That occurred at the just out — I don't have the dates of the emails, but many, many months ago. And that's — it occurred before the filing of the brief, which is why we note on page 16 that the Superior Court Division has refused to dismiss the charge. And so we sought enforcement with the court that took the plea, and the plea agreement has to be enforced by someone. Shouldn't you have asked before the sentencing hearing? Because at that point, you hadn't done that. At the — Judge Boasberg didn't have the record that you're now putting before us, but we're not a trial court. But you — you didn't — according to this transcript, you didn't raise this issue until the sentencing hearing. And at that point, the federal court prosecutor and the district court were taken off guard because you hadn't raised it before. And you didn't say at that point, well, we already asked the Superior Court Division, and they said no. You just said, hey, let's — let's dismiss this now. And both of them said, well, you have to ask the Superior Court first. And you didn't — you didn't do it before the sentencing hearing, which is what you should have done, right? Your Honor, frankly, I'm surprised that they were off guard. And if anyone was off guard, it was — what we were dealing with ahead of the sentencing was essentially an ambush with these First Amendment attacks in this case, and so we were focused on that. There was only one charge pending. We thought everyone was aware of it, and it was a final — we thought that was a final bookkeeping matter, that we just wanted to make sure that that was covered on the record. And to preserve this on appeal, you could have, if you asked right after the sentencing hearing for that superior court charge to be dismissed and they said no, then you could have filed a motion with Judge Boasberg to say we've asked, they said no, we'd like a ruling on whether the plea agreement covers this. And you didn't do that, did you? We didn't do that. We thought that it was preserved. Again, we were thinking in terms of what the — of Rule 51, that it was brought to the Court's notice. And again, I had understood the Court as — But sometimes you have to reassert. Like if a court says I'm not going to rule on this and you say okay, that changes things. You did raise it, but once the court says I'm not going to rule on this and you agree, then it seems that you've agreed to have no ruling. You have it preserved. The best answer that I have is just that we understood the government as having raised one simple objection and accepted that it was being referred for dismissal. And so it was only when we followed up over e-mails and they refused that we realized that this was an issue that needed to be raised on appeal. All right. Thank you. The case is submitted. Thank you.
judges: Pillard; Pan; Garcia